# Validity of the Food, Conservation, and Energy Act of 2008

Where a title in the version of the Food, Conservation, and Energy Act of 2008 passed by both houses of Congress was inadvertently omitted from the enrolled bill that was presented to and vetoed by the President, the version of the bill presented to the President became law upon Congress's successful override of the President's veto.

May 23, 2008

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
OFFICE OF MANAGEMENT AND BUDGET

You have asked whether the Food, Conservation, and Energy Act of 2008, H.R. 2419, has legal effect notwithstanding a significant discrepancy between the version of the bill passed by both houses of Congress and the enrolled bill presented to the President. We understand that a title III was included in the version of the bill passed by both houses of Congress but was inadvertently omitted from the enrolled bill that was attested to by the Speaker of the House and the President pro tempore of the Senate and presented to the President. The President vetoed the bill that was presented to him, and both houses of Congress then voted successfully to override the President's veto. We conclude that the bill as presented to the President (i.e., not including title III) has now become law.

That conclusion finds substantial support in the case law as well as Executive Branch practice. The Supreme Court has long held that a statute is not invalid merely because there is a difference between the text, as contained in the enrolled bill signed by the presiding officers of the respective houses of Congress and approved by the President, and the text passed by Congress as shown by its official records. In *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892), importers protesting duties imposed by the Tariff Act of 1890 argued that the Tariff Act was not good law because documentary evidence showed that a part of the bill passed by both houses of Congress was missing from the enrolled bill presented to and signed by the President. *Id*. at 668–69. The Court rejected that argument and held that attestations of "the two houses, through their presiding officers" should be deemed "conclusive evidence that [a bill] was passed by Congress." *Id*. at 672–73. Recent cases confirm that *Marshall Field* remains good law. *See, e.g.*, *Pub. Citizen v. U.S. Dist. Ct. for D.C.*, 486 F.3d 1342 (D.C. Cir. 2007) (enrolled bill rule of *Marshall Field* precluded inquiry into whether Deficit Reduction Act of 2005 satisfied bicameralism and presentment requirements of Constitution); *OneSimpleLoan v. Sec'y of Educ.*, 496 F.3d 197, 198 (2d Cir. 2007) ("court may not look beyond the version of the bill authenticated by the signatures of the presiding officers of the House of Representatives and Senate").

This Office adheres to the rule in *Marshall Field*. In 1986, OMB asked for our view on the validity of an appropriations bill when it was discovered that the enrolled bill signed by the President omitted several sections that were passed by both houses but dropped as a result of clerical error during the enrolling process.

We advised that the omitted portions were not law but that the signed bill, excluding the omitted provisions, had become law under the rule set out in *Marshall Field*. *See* Memorandum for the Files, from Douglas W. Kmiec, Assistant Attorney General, Office of Legal Counsel, *Re: Omission of Section from Enrolled Continuing Resolution* at 3 (Nov. 13, 1986) ("Kmiec Memorandum"). We believe that *Marshall Field* and our prior analysis are fully applicable here, where the President has vetoed the enrolled bill that was presented to him and both houses of Congress have voted by the requisite two-thirds majorities to override the President's veto of the enrolled bill. The Constitution provides that if the President has vetoed an enrolled bill by returning "it" with his objections to the house in which "it" originated, that house may "reconsider it"; if after reconsideration, that house votes by a two-thirds majority to "pass the Bill," "it" shall be sent to the other house, and if the second house also approves it by a two-thirds majority vote, "it" shall become law. U.S. Const. art. I, § 7, cl. 2. In each case, we take the "it" or the "Bill" to refer to the enrolled bill as it was presented to the President. That interpretation gives full effect to the official enrolling process of the Congress and maintains consistency between the President's consideration of the enrolled bill, as presented to him, and the House and Senate's consideration of the President's veto decision and each house's determination whether to override that decision. It also maintains consistency with the principle laid down in the *Marshall Field* case.

Thus, it is the enrolled version of the bill presented to the President that becomes law either by the President's signature or by successful congressional override of the President's veto. *See* Kmiec Memorandum at 3 ("it is clear from *Field v. Clark* that the Continuing Resolution *signed by the President . . .* remains valid," and that "the omitted portions are not deemed to be part of the signed bill") (emphasis added); *Pub. Citizen*, 486 F.3d at 1349–50. That view is consistent with Executive Branch and congressional practice. *See* Statement by President Ronald W. Reagan upon Signing H.J. Res. 738, 22 *Weekly Comp. Pres. Doc.* 1496, 1496 (Oct. 30, 1986) ("The provisions I signed into law . . . remain the law of the land. The Supreme Court has held that transmission errors of this sort do not in any way vitiate the legal effect of a President's signature. Accordingly, that which was signed became law."); Valerie Heitshusen, Cong. Research Serv., *Enrollment of Legislation: Relevant Congressional Procedures*, RL 34480, at CRS-6 (May 7, 2008) (in rare instances where there is a discrepancy between the enrolled bill and the versions passed by both houses, the "enacted" version is the "enrolled" text).

For these reasons, we conclude that the text of the enrolled bill presented to the President became law upon Congress's successful override of the President's veto, and the Executive Branch may lawfully make the expenditures authorized therein.

STEVEN G. BRADBURY
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*